IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 39138-8-III |
| KIMBERLY R. COLTRAIN | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| ERIC J. COLTRAIN, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Eric Coltrain appeals a contempt order and subsequent award of sanctions. He contends the trial court's contempt finding was in error because the court failed to make a specific finding of bad faith. Eric also argues that the sanction imposed—changing joint decision-making to sole decision-making—was erroneous because the sanction was not requested and was unrelated to the basis for contempt. Finding no error, we affirm.

No. 39138-8-III
*In re Marriage of Coltrain*

BACKGROUND

During the parties' dissolution, the trial court entered a temporary parenting plan setting the residential schedule for the parties' three children. The temporary parenting plan provided for joint decision-making. A few months after the temporary plan was entered, Kim filed various motions requesting relief. The motion was not made part of the record on appeal, but there are indications in the record that Kim was requesting sole decision-making. In response to these "various motions" the court required the parties to "communicate with each other about child-related issues only and shall use a parenting app to do so." Clerk's Papers (CP) at 10.

Four months later, Kim filed a motion for contempt, alleging that Eric was communicating with Kim about issues unrelated to the children. Eric did not deny the communications, but claimed that Kim did not have clean hands. The court then read into the record significant statements made by Eric that were unrelated to the children and found that the statements were not in response to anything said by Kim. The court held Eric in contempt for making the statements to Kim and ordered that Eric could purge the contempt by following the court's orders for the next six months and pay the statutory amount plus Kim's attorney fees. This contempt order is not before the court on appeal.

Several months later, Kim filed another motion for contempt, alleging that Eric continued to violate the court's order by communicating with Kim about issues unrelated to the children. Kim provided the court with 25 instances of inappropriate

2

communications spanning five months. She asked that the court grant sanctions for contempt, establish conditions to purge the contempt, and grant any other relief, including a civil penalty and reasonable attorney fees and costs.

At the contempt hearing, Eric, who was representing himself, did not deny making the statements identified by Kim but indicated confusion about what he could say and explained that he was "talking about parenting issues and/or advocating for my kids." Rep. of Proc. (RP) at 9-10. Additionally, Eric accused Kim of instigating abusive use of conflict. He suggested that Kim was also violating the order, arguing that for every instance of contempt alleged by Kim, he could identify "an analogous one on her end." RP at 12.

In its oral decision, the court pointed to numerous communications by Eric that did not relate to the children. The court noted that Eric did not deny the communications but seemed to have an "insatiable need to have these inappropriate conversations" that had nothing to do with the children. RP at 20. The court found Eric in contempt and in addition to the statutory fee and attorney fees, ordered that Kim would have sole decision-making because the court saw no other way to make the inappropriate communications stop.

In its written order, the court found that Eric "failed to abide by the terms of the [July 1, 2021] order by continuing to communicate with Petitioner in a hostile and abusive manner." CP at 128. The court also found that Eric did "not deny his statements

violated the court's order," and his failure to follow the order was "intentional." CP at

128. Finally, the court found that Eric was "not willing to follow [the July 1, 2021] order

[and] Respondent has demonstrated this by his willful actions." CP at 128. As part of

the sanctions, the court ordered that the temporary parenting plan be amended to reflect

that Kim would have sole decision-making for the parties' children.

Eric appeals.

## ANALYSIS

1. BAD FAITH

Eric contends that the contempt order cannot stand because the court made no

finding of bad faith. Kim argues that a written finding of intentional misconduct is

sufficient to find contempt. We find that the order of contempt was supported by the

court's findings.

The court's decision arising from a contempt proceeding is reviewed for an abuse

of discretion. *In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010).

"A court abuses its discretion by exercising it on untenable grounds or for untenable

reasons." *Id*.

The court must find a parent in contempt if "based on all the facts and

circumstances, the court finds after hearing that the parent, in bad faith, has not complied

with the order." RCW 26.09.160(2)(b). A finding that a parent "intentionally failed to

comply with a lawful order of the court" is sufficient to establish bad faith. *In re*

4

*Marriage of Davisson*, 131 Wn. App. 220, 224, 126 P.3d 76 (2006). Here, the court found that Eric intentionally failed to comply with the court's order.

Nevertheless, Eric argues that a specific finding of bad faith is required. To support his position, he relies on *Williams* for his argument that one "must establish the contemnor's *bad faith* by a preponderance of the evidence." *Williams*, 156 Wn. App. at 28 (emphasis added). However, this argument fails because this passage from *Williams* cites *James* which refers to "bad faith or intentional misconduct" as sufficient to predicate a contempt judgment. *Id.*; *In re Marriage of James*, 79 Wn. App. 436, 440, 903 P.2d 470 (1995). Eric's argument is foreclosed by *Davisson* where we held that a court's finding that a parent "intentionally failed to comply with a lawful order of the court," is sufficient to support a finding of contempt even in the absence of a specific finding of bad faith. 131 Wn. App. at 224.

The court's findings supported the finding of contempt.

2. SANCTIONS

Eric maintains that the trial court erred by imposing sole decision-making because Kim did not request sole decision-making and the sanction was unrelated to the basis for contempt. Kim argues that the trial court has broad discretion to award sole decision-making, and the sanction related to the violation. We find no abuse of discretion.

"A court's authority to impose sanctions for contempt is a question of law" reviewed de novo. *In re Interest of Silva*, 166 Wn.2d 133, 140, 206 P.3d 1240 (2009). Eric argues that Kim did not specifically request sole decision-making as a remedy or sanction and therefore the court was without authority to provide this as a sanction. We disagree for several reasons.

First, as we noted above, the record suggests that Kim did seek sole decision-making authority in one of her first motions and the court noted that her original concerns were ongoing and part of the contempt proceedings. Second, in her request for relief Kim made both specific and general requests for relief including a request for "any other relief." CP at 189. Third, RCW 26.09.160(6) authorizes a court "to impose remedial sanctions for contempt of court and is in addition to any other contempt power the court may possess." Any one of these reasons justify the court's sanction in this case.

Eric also contends that the decision to award Kim sole decision-making was not related to the findings of contempt. We view the sanctions imposed by a court upon a finding of contempt for abuse of discretion. *In re Marriage of Lesinski & Mienko*, 21 Wn. App. 2d 501, 514, 506 P.3d 1277 (2022).

Here, the trial court imposed a remedial sanction awarding sole decision-making to Kim "given [Eric's] inability to communicate in a non aggressive [sic] rational manner." CP at 129. The court previously warned that if Eric continued to violate the order, the sanction would be sole decision-making because the court did not otherwise

6

know how to stop the inappropriate behavior. At the very least, awarding Kim sole decision-making would reduce the parties' need to communicate with each other and was therefore "designed to ensure compliance with a prior order of the court." RCW 7.21.030(2)(c). The trial court's decision to change the temporary parenting plan and award sole decision-making to Kim was not an abuse of discretion.

3. ATTORNEY FEES ON APPEAL

Both parties request attorney fees on appeal. Eric does not prevail and we therefore deny his request. Kim contends that she is entitled to a fee award on appeal because her attorney fees result from a contemnor's noncompliance, citing RCW 26.09.160(3)(b). We agree.

Upon a finding of contempt, "the court shall order . . . [t]he noncomplying parent to pay, to the other parent or party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance." RCW 26.09.160(3)(b). This penalty is mandatory when the court finds bad faith or intentional misconduct. *In re Marriage of Eklund*, 143 Wn. App. 207, 214-15, 177 P.3d 189 (2008). Because Eric intentionally failed to comply

with the court order, he is required to pay the reasonable attorney fees that Kim incurred to enforce the court's order, including defending this appeal. *See id.* at 218.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.