IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>ISABELLE LATOUR,<br><br>                Respondent,<br><br>and<br><br>SEAN PATRICK KUHLMEYER,<br><br>                Appellant. | No. 87019-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Sean Kuhlmeyer appeals from a trial court order that found him in contempt of several orders relating to and stemming from the dissolution of his marriage to Isabelle Latour. On appeal, Kuhlmeyer avers that the trial court's contempt finding was not supported by substantial evidence. We disagree and affirm.

FACTS

A decree of dissolution entered in December 2018 ended the marriage of Sean Kuhlmeyer and Isabelle Latour, and extensive litigation has continued for several years since then, resulting in a number of appellate decisions.[1] The parties

---

[1] *In re Marriage of Kuhlmeyer*, No. 78765-9-I (Wash. Ct. App. Jan. 21, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/787659.pdf; *In re Marriage of Kuhlmeyer*, No. 81002-2-I (Wash. Ct. App. Mar. 8, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/810022.pdf; *Kuhlmeyer v. Latour,* No. 82828-2-I, (Wash. Ct. App. Nov. 7, 2022) (unpublished) https://www.courts.wa.gov/opinions/pdf/828282.pdf; *In re Marriage of Latour*, No. 85544-1-I (Wash. Ct. App. Nov. 25, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/855441.pdf, *reviewed denied*, 4 Wn.3d 1021 (2024), *cert. denied*, 146 S. Ct. 886 (2025).

have one child, C, and the court entered a final parenting plan in June 2018 and child support order (CSO) in December 2018, pursuant to the dissolution. The CSO directed each parent to pay a proportional share of the child's expenses including "work-related child care," "education," and "agreed extracurricular activities." (Capitalization omitted.) The parenting plan provided the protocol for Latour to seek reimbursement of expenses and for Kuhlmeyer to object to those expenses to which he disagreed. In September 2018, shortly before the final orders were entered in the dissolution case, Kuhlmeyer was found in contempt for failure to comply with the temporary child support order and parenting plan and violation of a previous restraining order.

In June 2023, Latour obtained a domestic violence protection order (DVPO) against Kuhlmeyer that protected her and C. The trial court expressly found that Kuhlmeyer presented a "credible threat to the physical safety" of Latour and C, and explained as follows:

> From the outset of this case, Ms. Latour has presented credible evidence regarding Mr. Kuhlmeyer's actions to coercively control her as well as verbal, physical, and emotional abuse directed toward her and her son. This has manifested itself as well in years of scorched earth, abusive litigation which has far exceeded the description of vigorous advocacy. Any reasonable person experiencing this conduct would be in fear for their mental, emotional and physical safety. Ms. Latour's representations on this matter [are] wholly credible. Mr. Kuhlmeyer's objections are unpersuasive and unsupported by the evidence put before this [c]ourt.

The order contained standard restraint conditions and also expressly required Kuhlmeyer to "participate in state-certified treatment," specifically a "domestic

---

These unpublished opinions are cited pursuant to GR 14.1 for the sole purpose of illustrating the extensive litigation that has preceded the matter now on appeal.

violence perpetrator program."[2]  It further directed that "[i]f [Kuhlmeyer] feels it necessary to communicate with [Latour] he may do so ONLY through the case manager."  The order also restrained Kuhlmeyer from contacting Latour's attorney and required him to serve pleadings solely "through the courts e[-]file system."  Kuhlmeyer's attorney was also subject to restrictions on contact with Latour's attorney and filing.  Several months later, in October 2023, Kuhlmeyer was again found in contempt because he had "failed to enroll in a domestic violence perpetrator treatment program" as required by the DVPO.

On May 8, 2024, Latour filed a motion for a contempt hearing premised on a number of allegations regarding non-compliance with the CSO, order on dissolution, and the June 2023 DVPO.  Relevant to this appeal, her motion alleged that Kuhlmeyer had continued to fail to meet his obligations under the CSO because he had not paid his proportional share of expenses related to C's extracurricular activities.  Latour contended she had "provided [Kuhlmeyer] with documentary proof of expenses and payment in the past, to no avail."  She further averred that Kuhlmeyer was not attending domestic violence treatment as required by the DVPO because his provider had informed her that Kuhlmeyer was "no longer enrolled in [their] program," his "program [had] been paused," and he was "not actively participating" in the program at that time.  The trial court entered an order to show cause on May 13 that directed Kuhlmeyer to appear for a hearing on the motion.

---

[2] RCW 43.20A.735 provides the "minimal qualifications" for domestic violence perpetrator treatment programs.

Kuhlmeyer filed a responsive declaration on May 15 and explained that he was "not *able* to comply with the provisions of the parenting plan and child support order regarding expenses" because he and his attorney were not "permitted to address these issues with the opposing party or counsel, respectively, under the terms of the protection order and the parenting plan." He claimed that Latour's purported failure to provide him with proper notice of expenses excused him from his obligation under the CSO. Kuhlmeyer also disputed her allegation regarding treatment and asserted it had been paused because a related case was pending in the Court of Appeals. On May 20, Latour provided a reply declaration to rebut Kuhlmeyer's contentions.

The show cause hearing on contempt was held on May 22, and the trial court heard argument from both parties. Latour reiterated the allegations from her petition and argued that she had "provided documentation of the child related expenses" and Kuhlmeyer had objected only now that she sought reimbursement. Latour also addressed Kuhlmeyer's lapsed treatment and asserted that the pause did not comply with WAC 388-60B-0420(4), which requires that "[a]ny breaks in treatment must be reasonable, justified, and follow the program's policies," because the provider had not disclosed to Latour why Kuhlmeyer had been allowed to pause treatment. Kuhlmeyer requested that the 2018 contempt order be purged because he was now in compliance and averred Latour had not provided him with adequate documentation of the expenses for which she now sought reimbursement and further asserted that he had been unable to object due to the restrictions imposed in the DVPO. Kuhlmeyer claimed that the person

overseeing his treatment had provided "two status reports" and a "sworn declaration" that indicated the provider had paused the program and Kuhlmeyer was still in good standing.

On June 18, 2024, the trial court entered an order finding Kuhlmeyer in contempt due to his failure to follow the directives of the CSO and violations of the DVPO. It noted that the CSO outlined procedures for Kuhlmeyer to object to expenses and did not find credible Kuhlmeyer's claims that he "never 'consented to basketball, summer camps or fencing lessons'" because he had not provided the trial court with any "evidence that he objected to the expense or proposed an alternative, in writing, as the parenting plan required." The trial judge also entered the following related finding:

> Mr. Kuhlmeyer has been on notice of the expenses and has failed to assert any affirmative defense as to why a judgment should not issue. Neither has Mr. Kuhlmeyer provided any documentation regarding his financial situation, thus the court rejects his statement that he is unable to pay.
> Pursuant to the Order of Child Support, the expenses for Ryther, Cub Scouts, Work-related child care and private school tuition/fees are expressly enumerated items for which he is required to pay.

The trial court further found that Kuhlmeyer was "in contempt for failing to enroll in and remain compliant with a state certified domestic violence treatment program." The order stated that "[p]ausing therapy because of a pending appeal is nonsensical" and Kuhlmeyer had "acted in bad faith by refusing to maintain compliance with the court ordered domestic violence treatment program. Finally, the contempt order entered judgment in favor of Latour for past due expenses related to C, unpaid child support, a civil penalty for contempt, and attorney fees and costs.

Kuhlmeyer timely appealed.

ANALYSIS

I.   Contempt Findings for Violation of DVPO and CSO

Kuhlmeyer assigns error to the trial court's findings of contempt based only on failure to comply with the 2018 CSO and 2023 DVPO.  He specifically contends that the trial court failed to construe the DVPO in his favor, there was insufficient evidence to support its finding of Kuhlmeyer's bad faith as to treatment, and because "the record is unclear whether Latour provided the required notice of her desire to have Kuhlmeyer pay additional childcare expenses between 2019 and 2022," the trial court's finding regarding his failure to pay expenses was not supported by substantial evidence.  Latour responds that the evidentiary record supports the challenged findings and the assignment of error regarding Kuhlmeyer's compliance with treatment is moot because he has resumed therapy.  Latour is correct on both points.

RCW 26.09.160(1) allows a parent to initiate contempt proceedings if the other parent fails to comply with court-ordered child support payments or parenting plan provisions.

> The performance of parental functions and the duty to provide child support are distinct responsibilities in the care of a child.  If a party fails to comply with a provision of a decree or temporary order of injunction, the obligation of the other party to make payments for support or maintenance or to permit contact with children is not suspended.  An attempt by a parent, in either the negotiation or the performance of a parenting plan, to condition one aspect of the parenting plan upon another, to condition payment of child support upon an aspect of the parenting plan, to refuse to pay ordered child support, to refuse to perform the duties provided in the parenting plan, or to hinder the performance by the other parent of duties

provided in the parenting plan, shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court and by awarding to the aggrieved party reasonable attorneys' fees and costs incidental in bringing a motion for contempt of court.

RCW 26.09.160(1). We will not reverse a contempt order unless the trial court has abused its discretion; a "trial court abuses its discretion by exercising it on untenable grounds or for untenable reasons." *In re Marriage of James*, 79 Wn. App. 436, 439-40, 903 P.3d 470 (1995).

We review the trial court's contempt findings for substantial evidence. *In re Marriage of Rideout,* 150 Wn.2d 337, 351-52, 77 P.3d 1174 (2003). "In a contempt case the trial court balances competing documentary evidence, resolves conflicts, weighs credibility, and ultimately makes determinations regarding bad faith." *In re Marriage of Williams*, 156 Wn. App. 22, 28, 232 P.3d 573 (2010). A parent petitioning for a contempt order to compel compliance with another court order bears the burden to "establish the contemnor's bad faith by a preponderance of the evidence." *In re Marriage of Eklund*, 143 Wn. App. 207, 215, 177 P.3d 189 (2008). We "do not review the court's credibility determinations." *In re Marriage of DeVogel*, 22 Wn. App. 2d 39, 53, 509 P.3d 832 (2022).

A.    Substantial Evidence Supports Finding That Kuhlmeyer Failed To Reimburse Latour

The trial court found that Kuhlmeyer had an obligation to pay for a proportional share of C's extracurricular expenses under the CSO, failed to make the required payments, and had not provided evidence of his compliance with the established means to contest claims for such expenses, specifically the notice procedures set out in the parenting plan and incorporated by reference into the

CSO. In reaching its findings on this issue, the trial court considered the signed declarations of both parties and supporting materials provided prior to the contempt hearing in addition to their argument at the hearing. The CSO was among the materials considered by the trial court, and its plain language not only expressly requires Kuhlmeyer to pay a proportional share of childcare and extracurricular expenses but also establishes through incorporation of the parenting plan by reference that Latour has sole decision-making authority over those matters. In a subsection entitled "[o]ther shared expenses," the CSO states,

> The parents shall each pay his/her proportional share of the following historical extracurricular activities for the child: Karate, Cub Scouts, and Swimming. The provisions in the Final Parenting Plan for the Father's input regarding decisions that financially impact him are incorporated by reference as if fully set forth herein.

The trial judge explicitly referenced this obligation in the contempt order when they found that the CSO required Kuhlmeyer to pay his proportional share of these and related costs.

The parenting plan was also before the court at the hearing on the contempt motion, and it plainly provided both the procedures by which Latour was to notify Kuhlmeyer of expenses for which she sought reimbursement and Kuhlmeyer could dispute the claimed expenses. The trial court also quoted the parenting plan in the contempt order:

> If [Latour] intends to make a decision that requires [Kuhlmeyer] to pay a proportional share of the expense under Paragraph 21 of the Child Support Order, she will give [Kuhlmeyer] at least 2 days' notice (or as much notice as possible) which shall include the proposed expense, the anticipated cost, activity schedule (if known)[,] and any other information available at that time that may impact him financially. (If [Latour] does not intend to seek payment from

> [Kuhlmeyer], she is not required to give him advance notice and to seek input from him.)

> If [Kuhlmeyer] does not agree, he will propose an alternative, in writing, within 2 days (in compliance with the communication provisions of Exhibit A)[3] unless the parties agree to a longer response time in writing. If [Kuhlmeyer] does not respond or does not object, [Latour] may implement her proposed plan and [Kuhlmeyer] will be obligated to pay his proportional share of the cost.

In the parenting plan, the language set out *supra* is followed by the following additional procedural instructions:

> If [Kuhlmeyer] does not agree and there is no agreement regarding the proposed expense within 3 days of receipt of the notice of the proposed decision, the issue will be submitted to the Case Manager or to Cheryll Russell for Arbitration if the Case Manager is no longer involved in this matter.

Again, these procedural components from the parenting plan are expressly incorporated into the CSO by reference. Under the terms of the parenting plan, if Kuhlmeyer failed to enter a written objection or otherwise respond to Latour's request, Latour could proceed with the parenting decision that results in the claimed expense and Kuhlmeyer would be "obligated to pay his proportional share of the cost."

Kuhlmeyer contends in briefing, as he did in the trial court, that he did not receive notice of the expenses for which Latour sought reimbursement. However, Latour's declaration stated that she had provided Kuhlmeyer with a Google Docs[4] link and he had been informed that he could review the documentation for ongoing

---

[3] "Exhibit A" and the communication provision therein was not designated as part of the record for review.

[4] "Google Docs" is an Internet-based platform that allows users to upload documents that can be viewed by others with a web link to the document.

expense tracking in that shared document. She also provided the court with a copy of the documentation accessible via the link to establish the date, nature, and total of the claimed expenses. The trial court credited Latour's explanation of the manner by which she had provided Kuhlmeyer notice of the expenses. We do not review credibility determinations. *DeVogel*, 22 Wn. App. 2d at 53. The trial court also expressly found that Kuhlmeyer "provided no evidence that he objected to the expense or proposed an alternative, in writing, as the parenting plan required." As such, under the plain language of the parenting plan, Latour was entitled to such reimbursement, and the trial court did not err when it found Kuhlmeyer in contempt based on noncompliance with the CSO.

B.    Challenge to Contempt Finding Based on Noncompliance with Treatment is Moot

Latour contends that because Kuhlmeyer is now in compliance with treatment requirement set out in the DVPO, since he has resumed treatment with a different provider, this issue is now moot. Kuhlmeyer did not file a reply brief or otherwise address Latour's mootness argument.

An issue is moot if "'a court can no longer provide effective relief.'" *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (quoting *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)). The June 2024 contempt order stated that Kuhlmeyer could purge the contempt finding based on failure to comply with domestic violence perpetrator treatment if he was to "[i]mmediately restart treatment or secure another treatment provider." In that contempt order, the court set a hearing for July 15 to review compliance. On July

- 10 -

12, Kuhlmeyer filed a declaration to address his compliance and stated he had resumed the required treatment with a different provider. At the review hearing, the trial court found that Kuhlmeyer was in substantial compliance and stated it would enter orders to that effect.[5] Because the trial court apparently found Kuhlmeyer in substantial compliance, he has purged that aspect of the challenged contempt order, and we cannot offer Kuhlmeyer any meaningful relief on this assignment of error. Accordingly, we decline to consider the merits of the issue further.

II. Attorney Fees on Appeal

Latour requests an award of attorney fees on appeal, offers relevant authority in support of her request, and properly dedicates a portion of her briefing in compliance with RAP 18.1(b). Latour provides two separate statutory bases for a fee award and also claims that she is entitled to fees under RAP 18.9(a) on the basis that Kuhlmeyer's appeal was frivolous.

Latour relies on RCW 26.09.160(1), which mandates that if the noncompliant party is found to be in contempt, the court shall award "the aggrieved party reasonable attorney[] fees incidental to bringing a motion for contempt of court." The language of RCW 26.09.160(1) indicates that a fee award is mandatory following a finding of contempt. *See In re Parentage of Schroeder*, 106 Wn. App. 343, 354, 22 P.3d 1280 (2001). In *Rideout*, our state Supreme Court held that RCW 26.09.160(1) also supports an award of fees on appeal: "a party is

---

[5] The only indication of this procedural history in the record before us is a clerk's minute entry, and the order referenced therein has not been designated by either party as part of the record on appeal. However, neither party disputes this procedural fact.

entitled to attorney fees on appeal to the extent fees relate to issues of contempt."

150 Wn.2d at 359. Because Latour has established an entitlement to a fee award under RCW 26.09.160(1) and controlling case interpreting that statute, we need not consider the alternate bases for her request.

We grant Latour's request for attorney fees on appeal, conditioned on her continued compliance with the procedural requirements of RAP 18.1.

Affirmed.

_____

WE CONCUR:

_____        _____
Chung, J.                                              Mann, J.